IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



KEVIN D. INGRAM,

    Petitioner,

v.                                       Civil Action No. 3:09CV831

BUCKINGHAM CORRECTIONAL CENTER,

    Respondent.

## MEMORANDUM OPINION

Kevin D. Ingram ("Ingram"), a Virginia prisoner, brings this petition for a writ of habeas corpus challenging his convictions in the Circuit Court for Lunenburg County ("Circuit Court") for two counts of assault and battery of a police officer, unlawful bodily injury of a police officer, destruction of property, obstruction of justice, resisting arrest, and concealing merchandise. Respondent has moved to dismiss. Ingram has responded. Ingram also has moved to amend his petition for a writ of habeas corpus. These matters are ripe for disposition. Jurisdiction is appropriate under 28 U.S.C. § 2254.

### I. Ingram's Grounds for Federal Habeas Relief

Ingram contends that he is entitled to relief upon the following grounds:

Claim (a)     Ingram's sentence violates the Double Jeopardy Clause of the United States Constitution.[1] (§ 2254 Pet. 6.)

Claim (b)     Ingram did not receive the effective assistance of counsel because counsel failed to conduct an adequate investigation:
              i.     Counsel failed to obtain Chief Dayton's medical records; and,
              ii.    Counsel failed to interview witnesses. (§ 2254 Pet. 7–8.)

---

[1] "No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend. V.

| | |
|---|---|
| Claim (c) | Ingram did not receive effective assistance from counsel in conjunction with guilty plea because counsel gave him misleading advice about the collateral consequences of his guilty plea. (§ 2254 Pet. 9.) |
| Claim (d) | Ingram did not receive effective assistance of counsel at sentencing because counsel did not object to Chief Dayton's hearsay testimony about his injuries. (§ 2254 Pet. 11.) |
| Claim (e) | The Supreme Court of Virginia erred in rejecting Ingram's claims for habeas relief without addressing the merits of his claims. (Writ of Habeas Corpus 1.) |
| Claim (f) | The Supreme Court of Virginia erred in rejecting Ingram's claims for habeas relief by failing to make findings of fact and conclusions of law and failing to list Ingram's claims as required by Virginia Supreme Court Rule 3A:24 and Virginia Code § 8.01-654(B)(5). (Writ of Habeas Corpus 1–2.) |
| Claim (g) | The Supreme Court of Virginia erred by applying *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974) to bar Ingram's double jeopardy claim. (Writ of Habeas Corpus 2.) |
| Claim (h) | The Supreme Court of Virginia erred by failing to expand the record or hold an evidentiary hearing on Ingram's habeas claims. (Writ Habeas Corpus 2.) |
| Claim (i) | Ingram's constitutional and statutory rights to a speedy trial were violated and counsel was deficient for failing to raise the issue. (Writ Habeas Corpus 7–9.) |
| Claim (j) | The prosecutor suppressed potentially exculpatory information in the form of the victim's medical records, which the prosecutor then used at sentencing. (Writ Habeas Corpus 10–13.) |
| Claim (k) | Ingram received ineffective assistance of counsel because counsel failed to challenge the victim's false statements at sentencing.[2] |

---

[2] Contrary to Respondent's assertion (Resp't's Br. Supp. Mot. Dismiss 5), Ingram did not raise Claim (k) in his § 2254 Petition or in his PETITION FOR A WRIT OF HABEAS CORPUS. Nor can Ingram raise such a claim simply by directing the Court to "SEE BriEF From State Writ." (§ 2254 Pet. 8.) A petitioner "may not simply incorporate by reference" claims and facts set forth in the state proceedings, but which are not recited in the federal petition for a writ of habeas corpus. *Cox v. Angelone*, 997 F. Supp. 740, 746 (E.D. Va. 1998) (*citing Mallory v.*

Claim (l)   Ingram's guilty plea is invalid because he was denied the benefit of his bargain and because his plea agreement was altered after Ingram signed the same. (Writ Habeas Corpus 14–19.)

Claim (m)   Ingram's right to confront his accuser was violated in that Chief Dayton was allowed to testify regarding his injuries and the doctor who treated the victim was not required to testify. (Writ Habeas Corpus 20–22.)

Claim (n)   Ingram was denied his right to a free trial transcript during the pendency of his first state petition for a writ of habeas corpus. (Writ Habeas Corpus 23–25.)

Claim (o)   The prosecution knowingly used false testimony when it allowed Chief Dayton to testify falsely that he could not use his left arm for physical activity for six months after he was assaulted by Ingram. (Writ Habeas Corpus 26–27.)

Respondent has moved to dismiss Ingram's § 2254 petition on the grounds that: Claims (e) through (h) and (n) do not state a cognizable basis for federal habeas relief; Claim b(i) lacks merit and Ingram's remaining claims are procedurally defaulted. For the reasons that follow, Respondent's motion to dismiss will be GRANTED.

Prior to addressing the procedural history and Ingram's defaulted claims, it is appropriate to dispense with those claims that do not provide a cognizable basis for habeas relief. "A state prisoner has no federal constitutional right to post-conviction proceedings in state court." *See Lawrence v. Branker*, 517 F.3d 700, 717 (4th Cir.) (citing cases), *cert. denied*, 129 S. Ct. 162 (2008). "Thus, even where there is some error in state post-conviction proceedings, a petitioner

---

*Smith*, 27 F.3d 991, 995 (4th Cir. 1994)). Incorporation by reference does not conform to the rules governing pleading for habeas proceedings. *Davidson v. Johnson*, No. 3:08cv406, 2008 WL 4159737, at *2 (E.D. Va. Sept. 9, 2008). Thus, as recited by Respondent, Claim (k) is not properly before the Court. (Resp't's Br. Supp. Mot. Dismiss 5.) Nevertheless, the Court notes that had Ingram properly pled such a claim as a ground for federal habeas relief, it would be procedurally barred under section 8.01-654(B)(2) of the Virginia Code because it was not raised in his first state petition for a writ of habeas corpus. *See infra* Part III.B.

is not entitled to federal habeas relief because the assignment of error relating to those post-conviction proceedings represents an attack on a proceeding collateral to detention and not to the detention itself." *Id.* (*citing Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988). Therefore, Claims (e) through (h) and (n), which seek federal habeas relief based on alleged errors in Tully's state post-convictions proceedings, will be DISMISSED.

## II. Procedural History

Ingram pled guilty in the Circuit Court to two counts of assault and battery of a police officer, unlawful bodily injury of a police officer, destruction of property, obstruction of justice, resisting arrest, and concealing merchandise. By final order entered on December 19, 2007, the Circuit Court sentenced Ingram to an active term of imprisonment of five years and twenty-four months. Ingram did not appeal.

### A. First State Habeas Petition

On July 8, 2008, Ingram filed a petition for a writ of habeas corpus with the Supreme Court of Virginia. In that petition, Ingram claimed that he was entitled to relief upon the following grounds:

(a) Ingram's sentence is excessive and violates the Double Jeopardy Clause of the Constitution;

(b) Ingram received ineffective assistance of counsel in that his attorney:
  i. tricked him into signing the plea agreement;
  ii. allowed his plea agreement to be altered after Ingram signed it; and,
  iii. failed to review the plea agreement and pre-sentencing investigation report with him;

(c) Ingram received ineffective assistance of counsel in that his attorney:
  i. failed to obtain a complete copy of the medical records of Chief Dayton;
  ii. refused to file a motion to reconsider his sentence;

4

      iii.    advised Ingram to appeal his misdemeanor convictions so that they would not count as prior convictions on his pre-sentencing investigation report and would be resolved with the felonies during a single sentencing event; and,

      iv.    failed to argue at sentencing for concurrent sentences; and,

(d)     Ingram was convicted based on false evidence.

On December 22, 2008, the Supreme Court of Virginia denied the petition. *Ingram v. Warden of the Buckingham Corr. Ctr.*, No. 081297 (Va. Dec. 22, 2008). The Supreme Court found that Claims (a) and (d) were barred because the claims could have been raised on direct appeal, but were not. *Id.* at 1–2 (*citing Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974)); *id.* at 6 (*citing Slayton*, 205 S.E.2d at 682). The Supreme Court found that Ingram's remaining claims lacked merit. *Id.* at 2–5.

### B.    <u>Second State Habeas</u>

On April 6, 2009, Ingram filed a second state habeas petition with the Supreme Court of Virginia. In his second state habeas petition, Ingram asserted that he was entitled to relief upon the following grounds:[3]

(a)     Ingram's sentence is excessive and violates the Double Jeopardy Clause of the Constitution and his attorney was ineffective for failing to so argue;

(b)     Ingram received ineffective assistance of counsel in that his attorney:
      i.    advised Ingram to appeal his misdemeanor convictions;
      ii.    advised Ingram that he was negotiating a plea agreement that never materialized;
      iii.    failed to advise Ingram about the collateral consequences of his plea;
      iv.    advised Ingram that "nolle prosequi" means that you plead guilty to a charge but serve no time;
      v.    advised Ingram he would serve only two years and nine months in prison;

---

[3] It is difficult to delineate Ingram's grounds for relief because they are not separately identified in his second state habeas petition. Rather, his individual claims must be extracted from the sixty-one page brief that he attached to his second state habeas petition.

5

<blockquote>

vi. advised Ingram to plead guilty when Chief Dayton's medical records would have proved Chief Dayton was not injured by Ingram; and,

vii. allowed Ingram's plea agreement to be altered after Ingram signed it;

(c) The Commonwealth Attorney violated the plea agreement;

(d) The trial court failed to conduct a proper plea colloquy;

(e) Ingram received ineffective assistance of counsel in that his attorney:
 i. failed to obtain a complete copy of the medical records of Chief Dayton and failed to adequately cross-examine Chief Dayton;
 ii. failed to interview or subpoena Ingram's witnesses; and,
 iii. failed to do any legal research;

(f) The Commonwealth Attorney withheld potentially exculpatory evidence when he failed to provide Ingram with Chief Dayton's medical records;

(g) Ingram was convicted based on false evidence regarding the extent of Chief Dayton's injury and hearsay evidence consisting of the doctor's statements to Chief Dayton, to which Ingram's attorney failed to object; and,

(h) Ingram's attorney was ineffective for failing to have Ingram's sentences run concurrently and failing to produce any evidence at sentencing.

</blockquote>

On June 4, 2009, the Supreme Court of Virginia denied Ingram's petition citing section 8.01-654(B)(2) of the Virginia Code.[4] *Ingram v. Warden of the Buckingham Corr. Ctr.*, No. 090890 (Va. June 4, 2009). Ingram petitioned for a rehearing. On September 22, 2009, the Supreme Court of Virginia denied Ingram's petition for rehearing. *Ingram v. Warden of Buckingham Corr. Ctr.*, No. 090890 (Va. Sept. 22, 2009). Thereafter, Ingram filed his present 28 U.S.C. § 2254 petition.

---

[4] That statute provides, in pertinent part, that a petition for a writ of habeas corpus "shall contain all allegations the facts of which are known to petitioner at the time of filing . . . . No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition." Va. Code Ann. § 8.01-654(B)(2) (West 2010).

## III. Exhaustion And Procedural Default

State exhaustion "'is rooted in considerations of federal-state comity,'" and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (*quoting Preiser v. Rodriguez*, 411 U.S. 475, 491-92 & n.10 (1973)). The purpose of the exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize "all available state remedies before he can apply for federal habeas relief." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (*citing Matthews v. Evatt*, 105 F.3d 907, 910-11 (4th Cir. 1997)). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate opportunity to address the constitutional claims advanced on federal habeas. "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (*quoting Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)). Fair presentation demands that "'both the operative facts and the controlling legal principles must be presented to the state court.'" *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) (*quoting Matthews*, 105

F.3d at 911). Thus, "the presentation to the state court of a state law claim that is similar to a federal claim does not exhaust the federal claim." *Id.* (*citing Duncan*, 513 U.S. at 366); *see Gray v. Netherland*, 99 F.3d 158, 162-64 (4th Cir. 1996) (concluding petitioner had not fairly presented his legal argument to the state courts). "The burden of proving that a claim has been exhausted lies with the petitioner." *Matthews*, 105 F.3d at 911 (*citing Mallory v. Smith*, 27 F.3d 991, 994 (4th Cir. 1994)).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard*, 134 F.3d at 619. This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (*citing Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A federal habeas petitioner also procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (*quoting Coleman*, 501 U.S. at 735 n.1).[5] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

---

[5] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Matthews*, 105 F.3d at 911 (*citing Sweezy v. Garrison*, 694 F.2d 331, 331 (4th Cir. 1982)).

8

### A. Claim Barred By *Slayton v. Parrigan*

In rejecting Ingram's first state habeas petition, the Supreme Court of Virginia concluded that Claim (a) was barred by the rule in *Slayton v. Parrigan*, 205 S.E.2d 680 (Va. 1974), because it could have been, but was not, raised on direct appeal. *Slayton* is an adequate and independent state procedural rule when so applied. *See Mu'Min v. Pruett*, 125 F.3d 192, 196–97 (4th Cir. 1997). Accordingly, Claim (a) is procedurally barred from review here.

### B. Claims Barred By 8.01-654(B)(2)

Ingram raised Claims (b)ii, (d), (j), (k), (l), (m) and (o) for the first time in his second state habeas petition. The Supreme Court of Virginia found that these claims were barred by Virginia's rule against successive habeas petitions found in section 8.01-654(B)(2) of the Virginia Code. Additionally, Claims (c) and (i) were not properly presented to the Supreme Court of Virginia in any habeas petition. The Supreme Court of Virginia would find these claims barred by section 8.01-654(B)(2) if Ingram now attempted to raised such claims. Section 8.01-654(B)(2) constitutes an adequate and independent procedural bar under these circumstances. *See George v. Angelone*, 100 F.3d 353, 363-64 (4th Cir. 1996). Thus, Claims b(ii), (c), (d), (i), (j), (k), (l), (m), and (o) are procedurally defaulted and barred from review here absent a showing of cause and prejudice or a fundamental miscarriage of justice.

"[C]ause" refers to "some objective factor external to the defense [that] impeded counsel's [or petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n.24 (1999) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Ingram suggests he has cause to excuse his default of failing to include claims b(ii), (c), (d), (i), (j), (k), (l), (m), and (o) in his first state habeas proceedings because of his lack of familiarity

9

with the legal system and because he was denied a copy of the transcript of his state court proceedings. "[T]he fact that a petitioner is untrained in the law or unfamiliar with a court's procedural rules does not provide a basis for establishing cause." *Wilson v. Johnson*, No. 1:08cv794 (LMB/TRJ), 2009 WL 2243708, at *3 (E.D. Va. July 22, 2009) (citing cases); *see Dellinger v. Bowen*, 301 F.3d 758, 766 (7th Cir. 2002) ( "[Y]outh and lack of education do not constitute the type of external impediment sufficient to excuse a procedural default."). Furthermore, defendants can rely upon their own recollections of court proceedings. *See United States v. Butler*, 178 F. App'x 327, 327 (4th Cir. 2006) (*citing United States v. Shoaf*, 341 F.2d 832, 835 (4th Cir. 1964)). Because Ingram attended both his plea and sentencing hearings, his lack of a transcript does not constitute cause adequate to excuse his default. *Montgomery v. Meloy*, 90 F.3d 1200, 1203–04 (7th Cir. 1996); *see McCleskey v. Zant*, 499 U.S. 467, 500 (1991) (concluding unavailability of document, the contents of which petitioner had at least constructive knowledge, did not prevent him from raising claim in his habeas petition). Accordingly, the Court rejects Ingram's assertion of cause.

Ingram also suggests that his continued incarceration amounts to "a miscarriage of justice." (Pet'r's Reply Br. Resp't's Mot. Dismiss 4.) In collateral review jurisprudence, a fundamental miscarriage sufficient to excuse a default refers to a showing of actual innocence. *House v. Bell*, 547 U.S. 518, 536–37 (2006). Contrary to Ingram's suggestion, the perceived unfairness of the Virginia court's decision does not amount to a miscarriage of justice sufficient to excuse his defaults. *See McBrayer v. Johnson*, 3:09cv411, 2010 WL 723675, at *3 (E.D. Va. Mar. 2, 2010) (rejecting petitioner's fundamental miscarriage of justice claim that was not a claim of actual innocence). Because Ingram has not demonstrated any basis for excusing his default, Claims (a), (b)ii, (c), (d), (i), (j), (k), (l), (m), and (o) will be DISMISSED.

## C. Ingram's Motions To Amend

### 1. The First Motion To Amend

On January 24, 2011, Ingram moved to amend his federal habeas petition to add claims that his attorney was ineffective for failing to move to dismiss the indictment and for failing to pursue a double jeopardy challenge. Leave to amend is appropriately denied where the amendment would be futile, such as here, because the proposed amended claims are procedurally defaulted. *See United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000). Specifically, the new claims Ingram proposes here were not raised in Ingram's first state habeas petition. Therefore, such claims would be barred under section 8.01-654(B)(2) of the Virginia Code. Accordingly, Ingram's motion to amend (Docket No. 22) will be DENIED. Furthermore, because Ingram's proposed claims of ineffective assistance of counsel are defaulted they cannot serve as cause to excuse the default of any of his other claims. *See Edwards v. Carpenter*, 529 U.S. 446, 452–53 (2000).

### 2. The Second Motion To Amend

On February 20, 2011, Ingram mailed to the Court a second motion to amend his federal habeas petition ("the Second Motion to Amend"). Ingram seeks to add a claim that his attorney was ineffective for advising Ingram to appeal his misdemeanor convictions from the Buckingham General District Court ("General District Court") to the Circuit Court. Because, as explained below, the one-year statute of limitations for § 2254 petitions would bar this new claim, it would be futile to permit Ingram to amend his federal habeas petition to add this new claim. *See Pittman*, 209 F.3d at 317.

Ingram's convictions became final, as that term is defined in 28 U.S.C. § 2244(d)(1)(A), on Friday, January 18, 2008, the last date to file a notice of appeal with the Circuit Court. *See*

*O'Donnell v. Virginia*, 2008 WL 3166515, at *2 (E.D. Va. Aug. 5, 2008) (*citing* Va. Code Ann. §§ 1-210(B), 8.01-675.3; Va. Sup. Ct. R. 5A:6(a)). On July 8, 2008, Ingram filed his first state petition for a writ of habeas corpus with the Supreme Court of Virginia, which tolled the limitation period under 28 U.S.C. § 2244(d)(2). Prior to the filing of the first state petition for a writ of habeas corpus, 171 days of the limitation period had elapsed.

When the Supreme Court of Virginia dismissed the first state petition for a writ of habeas corpus on December 22, 2008, the limitation period again commenced. The limitation period ran for another 104 days, until April 6, 2009, when Ingram filed his second state petition for a writ of habeas corpus. The limitation period was tolled until September 22, 2009, when the Supreme Court of Virginia denied Ingram's petition for rehearing on his second state petition for a writ of habeas corpus. *See* 28 U.S.C. § 2244(d)(2). The limitation period ran for another 88 days, until Ingram filed his federal petition for a writ of habeas corpus on December 20, 2009.[6] Thus, 363 days of the limitation period had elapsed before Ingram filed his federal habeas petition.

Ingram's Second Motion to Amend was not filed until February 20, 2011.[7] By that date, another 427 days of the limitation period had elapsed. Thus, the claim in the Second Motion to Amend was filed more than a year after the limitation period had expired. The claim in the Second Motion to Amend is barred by the statute of limitations unless it relates back to the claims in his original § 2254 petition, *see Pittman*, 209 F.3d at 317, or Ingram is entitled to equitable tolling. *See United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (*quoting Rouse v.*

---

[6] On December 20, 2009, Ingram executed his present § 2254 petition and mailed the same to this Court. The § 2254 petition is deemed filed as of that date. *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

[7] The Court deems Ingram's Second Motion to Amend filed as of the date he asserts he mailed it to the Court. *See Houston*, 487 U.S. at 276.

*Lee*, 339 F.3d 238, 246 (4th Cir. 2003)). Ingram fails to demonstrate that either of these doctrines apply.

An amended claim "does not relate back (and thereby escape [§ 2244's] one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005). In this regard, it is not sufficient that the new claim simply has the same form as the original claims, if the new claim "arises out of wholly different conduct." *Pittman*, 209 F.3d at 318. Thus, "a petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance." *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (*citing Davenport v. United States*, 217 F.3d 1341, 1346 (11th Cir. 2000); *United States v. Duffus*, 174 F.3d 333, 337 (3d Cir. 1999)). In his original federal habeas petition, Ingram did not raise any claims pertaining to counsel's advice to pursue an appeal of Ingram's misdemeanor convictions in the General District Court. Thus, Ingram's new claim, which raises such allegations, does not relate back to Ingram's original claims because the new claim "arise[s] from separate occurrences of 'both time and type.'" *Pittman*, 209 F.3d at 318 (*quoting United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999)); *see McLean v. United States*, No. 04-13534, 2005 WL 2172198, at *2 (11th Cir. Sept. 8, 2005).

The Supreme Court has "made clear that a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (*quoting Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The

13

record does not suggest that any extraordinary circumstance prevented Ingram from including his new claim in his original federal habeas petition. Moreover, Ingram's lengthy delay in seeking to amend his § 2254 petition refutes the notion that Ingram acted with the requisite diligence. Accordingly, Ingram's Second Motion to Amend (Docket No. 23) will be DENIED.

### IV. Ineffective Assistance of Counsel at Sentencing

In Claim (b)(i), Ingram asserts that counsel was deficient for failing to obtain Chief James Dayton's medical records. Ingram contends,

> Although the evidence shows that Petitioner did bite a Police Officer, the fact of the matter is the Officer was injured before on both arms, yet make [sic] claims that Petitioner's bite was the main reason for the extended injury. If counsel and the Prosecutor had produced the medical records to show that the Officer had surgerys [sic] before on bouth [sic] arm [sic] it would have contradicted the testimony he presented in Court. The massive injury the Prosecutor is arguing about occurred before the incident with Petitioner.

(Pet'r's Reply Br. Resp't's Mot. Dismiss ¶ 22.)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that to demonstrate the ineffective assistance of counsel, a defendant first must show that counsel's representation was deficient and then must establish that the deficient performance prejudiced the defense. *See id.* at 687. To satisfy the deficient performance facet of *Strickland*, the defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (*quoting Strickland*, 466 U.S. at 689). Prejudice requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "When a defendant asserts prejudice with respect to his sentence, [the court should] 'reweigh the evidence in aggravation against the

14

totality of available mitigating evidence.'" *Hedrick v. True*, 443 F.3d 342, 349 (4th Cir. 2006) (quoting *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)).

Ingram had pled guilty to two counts of assault and battery of a police officer, unlawful bodily injury of a police officer, destruction of property, obstruction of justice, resisting arrest, and concealing merchandise. Ingram faced up to nineteen years of imprisonment for these charges.[8] The Circuit Court ultimately sentenced Ingram to seven years of active imprisonment.

The charges against Ingram arose from his conduct on the night of November 14, 2006. On that night, Ingram along with Clifford Spencer, Al Hazelwood, and Samantha Hancock went to the Food Lion in the town of Victoria, Virginia. Ingram was observed shoplifting a beer, and a store employee called the police. Officer Hardy spoke with the Food Lion employee and then went to arrest Ingram and Hardy at the Village Estates apartment complex. Officer Hardy called for help and Game Warden Hale and Chief James Dayton followed Officer Hardy to the Village Estates.

When Officer Hardy arrived at the Village Estates, Ingram was in a car drinking his stolen beer with Hancock and Spencer. Hazelwood was urinating outside of the vehicle. (Sent'g Tr. 13–14.) Hazelwood saw Officer Hardy and started running. (Sent'g Tr. 14.) Officer Hardy pulled his car next to Ingram's car. (Sent'g Tr. 27.) Officer Hardy went to the window of the Ingram's vehicle told the occupants to put their hands where he could see them. (Sent'g Tr. 14.) Officer Hardy said Ingram was under arrest. (Sent'g Tr. 28.) Officer Hardy and Game Warden Hale removed Ingram from the vehicle. (Sent'g Tr. 29.) Officer Hardy then pursued Hazelwood.

---

[8] Ingram faced up to fifteen years imprisonment for his convictions for assault upon a law enforcement officer and unlawful bodily injury of a law enforcement officer. Va. Code § 18.2(f) (2006). Ingram faced up to one year of imprisonment on each of the remaining misdemeanor charges.

According to the prosecution's proffer of evidence at the plea hearing, Game Warden Hale attempted to place the handcuffs upon Ingram, but Ingram resisted and began cursing Hale. (Sept. 7, 2007 Tr. at 14.) At some point, Hale had to mace Ingram to get Ingram to place his arms back so he could be handcuffed. (Sept. 7, 2007 Tr. 14–15.) When Hale finally got the handcuffs on Ingram, Ingram spit in Hale's face. (Sept. 7, 2007 Tr. 15.) Hale said, "[Y]ou spit on me." (Sept. 7, 2007 Tr. 15.) Ingram replied, "[Y]ou damn right I did," and called Hale some names. (Sept. 7, 2007 Tr. 15.) At this point, Clifford Spencer got out of the vehicle and took off running. (Sept. 7, 2007 Tr. 15.) Hale brought Ingram around to Chief Dayton's side of the vehicle and then pursued Spencer. (Sept. 7, 2007 Tr. 15.)

Ingram began to spit on and curse Chief Dayton. (Sent'g Tr. 29.) Chief Dayton was trying to control Ingram, while also watching the driver of the vehicle, Ms. Hancock. (Sent'g Tr. 29.) Ingram continued to spit on Chief Dayton and jerk away from him. (Sent'g Tr. 41.) Chief Dayton did not feel he could control Ingram with only the handcuffs, so he attempted to place Ingram on the ground. (Sent'g Tr. 30.) Chief Dayton placed his right arm on Ingram's shoulder in an attempt to bring Ingram to the ground. (Sent'g Tr. 30.) Ingram bit Chief Dayton on the right bicep and would not let go. (Sent'g Tr. 30.) Ingram's teeth stayed clenched in Chief Dayton's arm for "[a]t least four or five minutes." (Sent'g Tr. 30.) As Ingram and Chief Dayton struggled, Ingram pulled Chief Dayton off of the ground. (Sent'g Tr. 30.) In this struggle, Chief Dayton hurt his left shoulder. (Sent'g Tr. 31.) Eventually, another officer arrived on the scene and Chief Dayton was able to place Ingram on the ground. Ingram had bitten through two shirts and broken the flesh of Chief Dayton's arm. (Sent'g Tr. 30-31.) The Supreme Court of Virginia found that "petitioner bit Chief Dayton's right bicep and would not let go, and in the continuing

16

struggle, Chief Dayton felt a pop in his left arm. Chief Dayton later received surgery to his left arm to repair a detached muscle." *Ingram v. Warden of Buckingham Corr. Ctr.*, No. 385592, at 3 (Va. Dec. 22, 2008.)[9]

Ingram has not demonstrated that counsel's failure to obtain Chief Dayton's medical records was deficient or prejudicial. Ingram merely speculates that Chief Dayton's medical records could demonstrate that Ingram was not the sole cause of Dayton's injuries, but the record does not support this speculation. In the period immediately following the altercation, Chief Dayton's main concern was the human bite on his right arm. (Sent'g Tr. 32.) However, following the incident, Chief Dayton discovered that he lacked any strength in his left arm. (Sent'g Tr. 33.) After a couple of months, Chief Dayton went to a doctor and discovered that he had torn a muscle in his left arm. (Sent'g Tr. 31–33.) The torn muscle required surgery. (Sent'g Tr. 43.) Counsel did question Chief Dayton about whether he had previously injured both his arms. (Sent'g Tr. 45.) Although Chief Dayton acknowledged that he previously had surgery on his left arm and had injured one of his arms "ten or twelve years ago," he did not suggest any basis for the injury to his left arm other than Ingram's action. (Sent'g Tr. 45.) Chief Dayton swore that he had not engaged in any other strenuous activity that could have resulted in the torn muscle. (Sent'g Tr. 32–33.)

Moreover, it was perfectly reasonable for counsel to perceive that a rigorous attempt to impeach Chief Dayton's view that Ingram had caused Dayton's injuries was not the proper tone

---

[9] Such findings of fact are presumed correct absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1).

to strike for sentencing.[10] Review of Ingram's Presentence Report reflects that Ingram had an extensive criminal record and few redeeming qualities that could recommend leniency. Therefore, counsel attempted to emphasize that by pleading guilty Ingram was accepting responsibility for his actions. (Sent'g Tr. 55.) Unfortunately for Ingram, Ingram undermined that strategy during his allocution wherein he blamed the incident on the police, complained about having to pay restitution for Chief Dayton's medical bills, and asserted that he was not really responsible for the injuries Chief Dayton alleged that he sustained. (Sent'g Tr. 56-60.) Ingram fails to demonstrate that counsel was deficient for not obtaining Chief Dayton's medical records or that there is a reasonable probability that Ingram would have received a lesser sentence had counsel obtained those medical records. Accordingly, Claim (b)i will be DISMISSED. The motion to dismiss (Docket No. 12) will be GRANTED. The petition for a writ of habeas corpus will be DENIED. The action will be DISMISSED.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

---

[10] Counsel had twice interviewed Chief Dayton prior to Ingram's guilty plea. (Sept. 7, 2007 Tr. 18–19.) Counsel was well aware that, according the Commonwealth's evidence, Ingram had caused the injury to Chief Dayton's left arm.

No law or evidence suggests that Ingram is entitled to further consideration in this matter. A certificate of appealability will be DENIED.

An appropriate Order shall issue.

/s/
James R. Spencer
Chief United States District Judge

Date: 3-3-11
Richmond, Virginia